Avert. J.
The Bill of Review was filed in April, 1844, in the Court of Common Pleas of Morgan county, to reverse a decree of the same Court, rendered in August, 1831.
The original Bill, according to the prayer of which this decree was obtained, had been brought by Robert and John Watson, the present defendants, against the widow and heirs of Richard Kay dec’d.' — rthe heirs living in Great Britain — and a final decree was rendered in favor of the Watsons.
In the Bill of Review, the widow, described as of Morgan county, and all others, who at the time were heirs of Richard Kay dec’d., also described as of the Kingdom of Great Britain, were complainants, and the two Watsons were defendants.
The original bill set forth, that on the 22d of September, 1817, a certain Daniel Myers purchased at the Land Office at Zanesville, the north-west quarter of section 30, township 6, in *28 range 30, and paid the "first instalment; that shortly after, the ’ said Myers, for value received, made a sale and assignment of ■ the same to Richard ííay; that on the 21st of September, 1821, said Kay surrendered the original certificate of purchase, and obtained from the Register of the Land Office at Zanesville, a certificate of further credit, but made no payment on the said tract; that immediately after the purchase by Kay, he entered into a parol agreement with the petitioners, that if petitioners would agree to go into possession of said land, and improve and cultivate the same for the joint use and benefit of said Kay and the petitioners, that ho the said Kay would pay the balance of the purchase money of the said land, and make a conveyance of the same to petitioners at some aftci period; that the proposition was made by the said Kay in consequence of his having brought petitioners with him from England when they were of a tender age, and in consequence of their residing in the family and with the said Kay as his own children ; that in compliance with ..the agreement, petitioners both went into possession of the land, cleared about 50 acres before the death of said Kay, cultivated the same, and the proceeds were applied, towards the support of said family; that as said Kay was a mechanic, and did not work on the farm, the whole of the labor was performed by the petitioners; that Kay died in the fall of 1827, leaving a widow residing at the date of the bill, in said Morgan county, and leaving in Great Britain certain brothers and sisters who are named, and made parties, but leaving no children. The bill further states, that owing to the sudden death of said Kay he had not paid the balance of purchase money due on the land, nor made a conveyance or assignment to the petitioners; that the labor bestowed by them on the land was with the knowledge and approbation of said Kay, and under a full understanding and agreement that the land should be conveyed to the petitioners; that unless the balance of the purchase money should be paid by the 3d day of July then next, the land would revert to the United States, and the money paid be forfeited.
*29 The bill prays that the defendants be compelled to release' or assign their interest in the land.
. . . Testimony was' taken in the case, and at the August term, 1831, a decree rendered for a specific execution of the contract.
To the bill of review presented to reverse this decree, a demurrer was filed, and on hearing, the decree was reversed. The cause was then continued under the bill of review, and leave given to the defendants to answer. Answers were subsequently put in, farther testimony was taken, and after successive reports of masters in the case, made and set aside, at length, at the February term, 1848,, a final decree passed against the defendants in the bill of review, from which an appeal was taken to the Supreme'Court of Morgan county.
There has been some discussion by the counsel upon the effect of the appeal taken in this case; whether all the orders and decrees of the Court below are vacated by it, as they would , have been of course, by an appeal taken directly after the order of reversal. We consider the bill of review as the case brought up by the appeal. It was treated and continued as such throughout,in the Common Pleas, and the answers and all subsequent proceedings, including the final decree, rest upon it as a basis. If this be the, state of the case, then the question is presented here as it was at first, before the Common Pleas, whether the original decree is erroneous, and we come to consider the several errors assigned by the complainants in their bill.
The 1st is, That no process was served on the defendants in the original bill, except upon the widow, nor was notice by publication given as required by law.
, 2d.- That the affidavit of John Wilkin was the only evidence before the Court, of publication.
3d. That the evidence, in the cause does not warrant the decree.
4th. That the facts stated in the original bill are not sufficient to sustain the decree; nor to entitle the complainants in the original bill to any relief.
*30 5th. That James Kay was not alive-at the time of rendering said decree, and could not be bound thereby, and consequently complainants ought not to be bound by the decree.
6th. That said Mary, at the time of obtaining said decree, was a feme covert, and was not made a party to said original bill by the name of Mary Kay, and therefore could not be bound by said decree, consequently complainants could not, any of them, be bound thereby. An answer to the two first errors is furnished by the record, which contains an Order of publication duly made by the Court; a copy of the advertisement, published in the newspaper, as directed, ■ and which was continued for the nine weeks, and more than the nine weeks specified in the ■ order, according to the affidavit of one of the publishers. The affidavit represents the notice as published “ on the 13th November, 1830, and continued in each publication of said paper, from that time till the 19th of March,” being more than nine weeks. This we consider sufficient proof of notice, and the defendants are thereby parties! But further, the fact of publication is found by the Court in their decree, and being so found, cannot afterwards be questioned by the parties.
The 3d and 4th assignments deny that the facts, as set forth in the original bill, show a case for relief, and deny that there is sufficient evidence to warrant the decree.
The case stated in the bill is one of common equity jurisdiction ; a contract upon a sufficient consideration for the purchase of a tract of land, or rather the vendor’s- equitable interest in the tract. There can be no objection to the sale of an equitable interest any more than to the sale of a legal interest, and a parol contract will be held as binding upon proof of part performance, as though it were in writing. Neither is an equitable interest less the subject of sale, because the legal title remains in the government. Regarding the bill, then, as sufficient upon its face, we have examined the evidence, and are not satisfied that the Court committed any error in their judgment upon the facts. They find expressly in their decree that the facts charged in the bill are true, and after the lapse of so many years, their finding ought not to be disturbed, without substantial cause.
*31 The fifth error alleged, that Jane Kay was not living when the decree was rendered, cannot furnish a ground in this case for reversal. The decree in that respect is merely void, senting nothing upon which a bill of review can operate. She was dead, as it appears, before the bill by the Watsons was filed.
The sixth error may be well assigned. If Mary Kay was a feme covert, she could not, by the proceeding against her as a feme sole be made a party, and the decree against her would be erroneous. As such feme covert at the date of the decree, she would be entitled to her bill of review at any time within five years after disability removed. But the consequences supposed in their bearing upon the interests of others, would not follow. The subject matter in controversy is capable of division, and a bill of review for her undivided part of the land, would secure to her all her title, though in connexion with different joint owners. A privilege expressly given to her by the law, solely on account of her coverture, cannot jointly be extended to others, without there be a necessity for it. In such a case, a separate bill should be filed. And it may frequently happen that interests which were common to all when the decree was taken, may afterwards become separate and adverse, within the time limited for a bill of review, and thus furnish a case for a separate bill. In behalf of this feme covert alone, without joining the other complainants, a bill of review might have been brought.
But what benefit she could derive from her bill of review, must depend upon the settlement of a farther question which arises in the case.
Richard Kay died intestate, leaving a widow in this country, and brothers and sisters, aliens, residing in Great Britain, who were his only heirs. Under the law of descents, then in force, (the act of February, 1824,) the estate of the intestate passed to the widow, if “ his only kin or heirs of his blood, were aliens, unless they appeared and presented their claim within fifteen years from the passage of the act.” None of the alien heirs did *32 appear and present their claim within the time prescribed. None of them therefore can now set up a claim to the land. If the interest in the land did not belong to the Watsons, under their contract, it passed to the widow, to be divested only by virtue of the proviso of the act. It has been asked in behalf of the complainants, if the original bill and the proceedings under it, may not operate to bring them within the proviso. We think not. We cannot see how, by this suit of the Watsons against these aliens, they can be said to appear and prosecute their claim against this widow, even though she was also a defendant in the same suit. As it appears then in the case, that this feme covert, at the time of filing the bill of review, had no claim to the land in controversy, there will be a decree against her as well as the other complainants.
C. C. Covey, for Complainants in Review.
Hayward &f Hanna, for Defendants.'